STATE OF NORTH CAROLINA v. ANNE PHILLIPS AND SYLVESTER
PHILLIPS

No. 205A88

(Filed 10 January 1991)

**1. Grand Jury § 3.3 (NCI3d) — grand jury foreman — selection —
racial discrimination**

The trial court did not err in a murder and felony child
abuse prosecution by determining that the State had rebutted
defendants' *prima facie* case of racial discrimination in the
selection of the grand jury foreman where, in response to
defendants' motions to dismiss the indictments, the trial judge
removed the foreman and asked the grand jury to retire to
the jury room and nominate a new foreman from among
themselves, including the foreman just removed; the grand
jury retired and nominated the foreman just removed; the
judge in his discretion reappointed that foreman; the district
attorney resubmitted the bills of indictment; and the grand
jury returned true bills. The trial judge's finding that the
foreman of the grand jury which returned the second indict-
ments against defendant was elected from the members of
the grand jury was supported by the evidence, and his conclu-

1

STATE v. PHILLIPS

[328 N.C. 1 (1991)]

sion that the method used in selecting the foreman was racially neutral was supported by the finding of fact. The record is silent as to the process used by the grand jury, there is no suggestion that the members of the grand jury acted in other than a racially neutral manner, and on its face the process appears to be racially neutral.

**Am Jur 2d, Grand Jury § 12.**

2. **Criminal Law § 106 (NCI4th) — murder and felony child abuse — pretrial interviews with child witnesses not allowed — no error**

Defendants in a prosecution for murder and felony child abuse had no right to pretrial interviews with children who were witnesses to the alleged child abuse without the witnesses' consent. The right to pretrial discovery is a statutory right and nothing in the statutory provisions compels the State witnesses to subject themselves to questioning by the defense before trial. North Carolina rules of discovery provide that statements by a State witness or prospective State witnesses other than defendant are not subject to discovery until that witness has testified on direct examination at trial. N.C.G.S. § 15A-903(f)(1) (1988).

**Am Jur 2d, Depositions and Discovery §§ 401, 402, 404-406.**

**Accused's right to depose prospective witnesses before trial in state court. 2 ALR4th 704.**

3. **Searches and Seizures § 43 (NCI3d) — motion to suppress — child witnesses — subpoenas quashed**

The trial court in a prosecution for murder and felony child abuse did not err by quashing subpoenas issued to two children ordering them to appear and testify at a hearing on defendants' motion to suppress evidence seized pursuant to a search warrant. Both children were subsequently found competent to testify at trial and their testimony was corroborated by the testimony of other witnesses. Defendants were not prejudiced by their inability to call the children as witnesses to impeach the search warrant because the affidavits support probable cause even without the statements of the children.

**Am Jur 2d, Depositions and Discovery §§ 404-406; Searches and Seizures §§ 26, 64, 66, 66.5.**

**4. Criminal Law § 53 (NCI3d) — felony child abuse and murder — battered child syndrome**

The trial court did not err in a prosecution for murder and felony child abuse by allowing a pediatrician to give testimony on the battered child syndrome or by instructing the jury on the battered child syndrome. The pediatrician was qualified and accepted by the court as an expert in pediatrics and child abuse, his opinions were within the realm of his expertise and his opinions were permissible subjects of expert opinion.

**Am Jur 2d, Infants § 17.5.**

**Admissibility at criminal prosecution of expert testimony on battering parent syndrome. 43 ALR4th 1203.**

**5. Parent and Child § 2.2 (NCI3d) — child abuse — battered child syndrome — instructions**

The trial court made it clear when instructing the jury that while a finding that a child suffered from battered child syndrome permits an inference that such injuries were inflicted by a caretaker, such inference is not mandatory and the burden remains on the State.

**Am Jur 2d, Infants § 17.5; Trial §§ 760, 761.**

**6. Parent and Child § 2.2 (NCI3d) — murder and felony child abuse — testimony concerning prior abuse — admissible**

The trial court did not err in a prosecution for murder and felony child abuse by allowing a child abuse victim to testify that defendants had previously chained him to a pole in their basement in Chicago. Defendants contended that the injuries were inflicted by younger siblings and the evidence was relevant and admissible under N.C.G.S. § 8C-1, Rule 404(b) for the purpose of proving identity.

**Am Jur 2d, Evidence §§ 321, 330; Infants § 17.5.**

**7. Criminal Law § 34.4 (NCI3d) — murder and felony child abuse — prior instances of abuse — admissible**

The trial court did not err in a prosecution for murder and felony child abuse by admitting testimony from former foster children of defendants regarding child abuse occurrences taking place in Chicago one or two years prior to the present crimes. The testimony was essentially the same as the testi-

mony of one of the victims and another witness and was properly admitted as corroborative evidence. The trial judge properly gave a limiting instruction prohibiting the jury from considering against defendant Sylvester Phillips testimony regarding any instance that occurred when Sylvester Phillips was not present.

**Am Jur 2d, Evidence §§ 321, 330; Infants § 17.5.**

8. **Criminal Law § 43.4 (NCI3d) — murder and felony child abuse — autopsy and crime scene photos — admissible**

The trial court did not err in a prosecution for murder and felony child abuse by admitting eighteen autopsy photographs of the victim and photographs of defendants' home and automobile. The autopsy photographs of the victim were necessary to illustrate the testimony of the pathologist and were not excessive or repetitive. Photographs of the home depicted the murder scene and the scene of the child abuse crimes, and the photographs of the automobile were used in testimony describing the victim being transported to the hospital.

**Am Jur 2d, Homicide §§ 417-419.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

9. **Criminal Law § 169.6 (NCI3d) — murder and felony child abuse — offers of proof refused — no prejudicial error**

There was no prejudicial error and no abuse of discretion on the part of the trial judge in a prosecution for murder and felony child abuse in the court's refusal to permit certain offers of proof.

**Am Jur 2d, Trial § 128.**

10. **Appeal and Error § 147 (NCI4th) — murder and felony child abuse — child witnesses competent to testify — no objection at trial**

Defendants did not object at trial to the court's ruling finding three child witnesses competent to testify and were precluded from attacking the rulings for the first time on appeal. N.C.G.S. § 8C-1, Rule 103(a)(1) (1988).

**Am Jur 2d, Appeal and Error §§ 517, 601, 602.**

**11. Witnesses § 1.1 (NCI3d)— murder and felony child abuse— child witnesses—independent psychiatric evaluations—denied**

The trial court did not err in a prosecution for murder and felony child abuse by denying defendants' motions for independent psychiatric evaluations of the child witnesses. There is no statutory authority for a superior court judge to order a witness to undergo a psychiatric evaluation, and defendants have not shown any prejudice from the denial of their motions because the child witnesses had been given a psychiatric evaluation and the doctor's testimony was available to defendants.

**Am Jur 2d, Witnesses § 92.**

**12. Criminal Law § 107 (NCI4th)— murder and felony child abuse— child witnesses—records sealed**

The trial court in a prosecution for murder and felony child abuse acted properly in not reviewing records and not reversing another judge's order sealing for appellate review medical, hospitalization, school, and social services records pertaining to three child witnesses and the victim. The first judge examined all of the records *in camera*, stated that he found no evidence favorable to defendants, concluded that the documents were not discoverable by defendants, and that the information should be sealed for appellate review. The trial judge had not heard any evidence in the case and his reliance on the first judge's decision was proper; moreover, the Supreme Court reviewed the sealed documents and agreed with the first judge's conclusions.

**Am Jur 2d, Depositions and Discovery § 425.**

**13. Homicide § 30.3 (NCI3d); Parent and Child § 2.2 (NCI3d)— murder and felony child abuse—involuntary manslaughter and misdemeanor child abuse not submitted—no error**

The trial court did not err in a prosecution for murder and felony child abuse by refusing to submit verdicts of either involuntary manslaughter or misdemeanor child abuse where there was no evidence to support those verdicts.

**Am Jur 2d, Homicide §§ 530, 544.5; Infants § 17.5; Trial §§ 878, 880.**

**14. Parent and Child § 2.2 (NCI3d) — felony child abuse — instruction on serious physical injury — no error**

The trial court did not err in a prosecution for felony child abuse by instructing the jury that serious physical injury is "such physical injury as causes great pain and suffering." N.C.G.S. § 14-318.4(a) (1986).

**Am Jur 2d, Infants § 17.5; Trial §§ 701, 705.**

**15. Homicide § 25 (NCI3d) — murder by torture — definition of torture — no error**

There was no prejudicial error in a prosecution for murder and felony child abuse where the court did not initially include the definition of torture, but gave a definition when requested by the jury which did not include premeditation and deliberation. Neither premeditation and deliberation nor intent to kill are elements of murder in the first degree when the homicide is perpetrated by means of torture, and any error in omitting the definition of torture in the original jury instructions was cured when the jurors later requested and the judge provided a correct definition.

**Am Jur 2d, Homicide §§ 48, 499.**

**16. Criminal Law § 685 (NCI4th) — murder and felony child abuse — instruction on failure to testify — not timely requested**

The trial judge did not err in a prosecution for murder and felony child abuse by failing to instruct on defendant Sylvester Phillips' decision not to testify or by failure to give other special instructions which were not requested until after the court had charged the jury and the jury had been sent to the jury room.

**Am Jur 2d, Criminal Law § 940; Trial § 775.**

**17. Homicide § 31 (NCI3d) — murder — verdict sheet — theories of premeditation and deliberation or torture listed — no error**

There was no error in a prosecution for murder and felony child abuse where the trial court indicated on a verdict sheet that defendants could be found guilty of first degree murder based upon the theories of premeditation and deliberation or torture or both. The jury found both defendants guilty of murder in the first degree by torture, made no finding as to murder in the first degree based on premeditation and

deliberation, and there was no evidence the jurors were confused or prejudiced by the choices listed on the verdict sheet.

**Am Jur 2d, Homicide §§ 48, 52, 541, 542.**

18. **Homicide § 21.5 (NCI3d); Parent and Child § 2.2 (NCI3d) — murder and felony child abuse — evidence sufficient**

The trial court did not err or abuse its discretion in a prosecution for murder and felony child abuse by refusing to enter a judgment notwithstanding the verdict, to set aside the verdict, to grant a mistrial, or to grant a new trial where the evidence was sufficient to submit charges of first degree murder and felony child abuse to the jury and to sustain the jury verdicts.

**Am Jur 2d, Homicide § 425; Infants § 17.5.**

APPEAL by defendants pursuant to N.C.G.S. § 7A-27(a) from judgments sentencing them to life imprisonment entered by *Ferrell, J.,* on 25 February 1988, in Superior Court, NEW HANOVER County. Defendants' motions to bypass the Court of Appeals as to additional judgments allowed by the Supreme Court 10 May 1988. Heard in the Supreme Court 15 February 1990.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Michael W. Willis and T. Craig Wright for defendant-appellant Anne Phillips.*

*H. Clifton Hester and Don W. Viets, Jr. for defendant-appellant Sylvester Phillips.*

*Malcolm Ray Hunter, Appellate Defender, for Office of the Appellate Defender, amicus curiae; and Benjamin B. Sendor, Assistant Appellate Defender, pro hac vice.*

FRYE, Justice.

On 6 October 1987, the Bladen County Grand Jury indicted both defendants on first degree murder and felony child abuse charges. The murder indictments charged each defendant with the first degree murder of Tameka Lehmann, on 14 June 1987, in violation of N.C.G.S. § 14-17. The child abuse indictments charged each defendant with, on the same date, intentionally inflicting serious

physical injury on John Phillips, age thirteen, in violation of N.C.G.S. § 14-318.4, which makes such offense a Class H felony when committed by a parent or other person providing care to or supervision of a child less than sixteen years of age. The four cases were consolidated for trial. On motion by both defendants, and after stipulations by the State and defendants, Judge Henry W. Hight, Jr., ordered a change of venue from Bladen County to New Hanover County where the trial took place. A jury found each defendant guilty of first degree murder of Tameka Lehmann by torture and felony child abuse of John Phillips. At the sentencing phase of the capital trial, the jury made findings of aggravating and mitigating circumstances but recommended life imprisonment for each defendant after failing to find that the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstances. The trial judge sentenced both defendants to life imprisonment for first degree murder in accordance with the recommendations of the jury and to ten years imprisonment for felony child abuse. Both defendants appealed.

The State's evidence at trial tended to show a horrifying pattern of child abuse.

Defendant Anne Phillips, age sixty-eight, and her husband, defendant Sylvester Phillips, age fifty-seven, were the foster parents of Tameka Lehmann, the eleven-year-old murder victim, and Tarrie Lehmann, age ten. The defendants were also the adoptive parents of John Phillips, the child abuse victim, and Vera Phillips, age eleven.

On advice of his doctor, Sylvester Phillips moved to North Carolina from Chicago in 1983. Anne Phillips remained in Chicago with the children until the house was sold. In the interim, Sylvester Phillips returned to Chicago on visits and sometimes stayed in Chicago for as long as two weeks. In April of 1987, Anne Phillips and the four children moved from Chicago to Sylvester Phillips' home in Bladenboro, North Carolina.

At 3:17 a.m. on 15 June 1987, Tameka was taken to the emergency room of the Bladen County Hospital and pronounced dead on arrival. An autopsy was performed by Dr. Smedburg, a pathologist at Chapel Hill. Dr. Smedburg found the following marks on Tameka's body: horizontal linear abrasions on her abdomen consistent with having been bound; two scars and six abrasions on her top left shoulder; two abrasions on the inner side of her right arm; a one-

inch abrasion and a one-half-inch abrasion with contusion bruising on the right side of her hip; circular scars on her right knee and multiple abrasions around her kneecap; vertical patterned abrasions on the front of the lower part of her legs and tops of her feet; three parallel horizontal patterned abrasions and a recent U-shaped patterned abrasion on her back; a large gash bruise on her lower back containing fifty milliliters of blood; injury to the kidneys; three lacerations to the inside of her vaginal wall; multiple abrasions on the mons pubis, consistent with skin being cut by scissors; a bite mark on the mons pubis; fresh abrasions around her nose, nostrils, and mouth; fresh semicircular abrasions with hemorrhage underneath her neck; two hemorrhages beneath her scalp; and her stomach, mouth, and breathing tube contained vomitus with red and black flecks of material.

Dr. Smedburg diagnosed Tameka as fitting the battered child syndrome. He based his opinion on the patterned injuries, the various stages of healing, and the types of injuries which exceeded corporal punishment.

On 15 June 1987, Dr. Stanley Rule, a pediatrician and child medical examiner, examined the other children, at the request of the Bladen County Department of Social Services. Dr. Rule found evidence of child abuse on John Phillips. He noticed over one hundred injuries with at least sixty percent of the injuries appearing to be as recent as three days old or less. He also observed John walking with a limp and noticed abrasions, scratches, and bruises on John's body.

On both of John's feet, Dr. Rule found a great deal of swelling from the ankle bones down to John's toes. In Dr. Rule's opinion, the swelling was caused by some type of restriction in that area and was suggestive of a constriction or of being bound. There were fresh lesions on top of the swollen areas of his ankles. Four recent lesions and three scars were on John's scalp. A total of forty-two bruises or abrasions from twenty-four hours to three days old were on his back. There were two ulcer type lesions on the left buttock which formed a crater in the skin one-eighth of an inch deep, about one and one-half inches across. On John's chest Dr. Rule found three linear abrasions nine millimeters apart and about a centimeter in width and eleven centimeters long from the front of the armpit to the area of the nipple. These markings could have been caused by a rope or chain. On the right side

of the upper abdomen, Dr. Rule found four linear abrasions from John's rib cage to his waist. There were lesions several weeks old in the groin area; a two-inch fresh bruise on the right thigh; ten bruises on the left posterior thigh that were several days old; a fresh ulcerated lesion on the right middle toe; a hand fracture; and serious tissue injuries to the ankles.

Defendant Anne Phillips testified at trial, and stated that she never physically punished the children, but disciplined them by talking. Defendant Sylvester Phillips did not testify at trial.

Additional evidence and other matters relevant to defendants' specific assignments of error will be discussed later in this opinion as necessary for an understanding of the twenty-six issues raised by defendants. We will address the questions raised by defendants in four categories: I. pretrial motions; II. general trial rulings; III. jury instructions; and IV. dismissal and post-trial motions.

I.

[1] The first question we address is whether the trial court erred in determining that the State had rebutted defendants' prima facie case of racial discrimination in the selection of the foreman of the grand jury that indicted them. We conclude that the trial court did not err.

Defendants were first indicted by the Grand Jury of Bladen County on 3 August 1987. On 30 September 1987, defendants filed motions to dismiss the 3 August 1987 indictments, alleging that there was racial discrimination in the selection of the grand jury foreman. Defendants relied upon this Court's decision in *State v. Cofield*, 320 N.C. 297, 357 S.E.2d 622 (1987) (*Cofield I*) (filed 7 July 1987). The presiding judge announced to the grand jury in open court that, based on his reading of this Court's decision, he was going to remove the foreman of the grand jury. He then asked the grand jury to retire to the jury room and nominate a foreman for the grand jury. He told the grand jury: "You may nominate any one of your members, including Mr. Sessoms [the present foreman]."

The grand jury retired and nominated Mr. Sessoms. The judge, in his discretion, reappointed Mr. Sessoms as foreman of the grand jury. The district attorney then resubmitted the bills of indictment against both defendants to the grand jury, which returned true bills on 6 October 1987.

In *Cofield I*, this Court defined two methods of establishing a prima facie case of racial discrimination. To establish racial discrimination under the first method, the defendant must show that the selection procedure itself was not racially neutral. *Id.* at 308-09, 357 S.E.2d at 629. In order to establish racial discrimination under the second method, the defendant must show that for a substantial period in the past, relatively few blacks have served as foremen. *Id.* Defendants in the present case presented evidence under the second method by showing that since 1960 only one black in Bladen County had served as foreman. The presiding judge concluded that this evidence was sufficient to establish a prima facie case of racial discrimination. However, this conclusion related to the selection of the foreman of the grand jury that returned the 3 August 1987 indictments against the defendants.

The State may rebut defendants' prima facie case of racial discrimination by offering evidence that the process used in the selection of the foreman of the grand jury that indicted defendants for the present crimes was in fact racially neutral. *Id.* at 309, 357 S.E.2d at 629. *See also State v. Cofield*, 324 N.C. 452, 379 S.E.2d 834 (1989) (*Cofield II*). No evidence was presented as to the process used in selecting previous grand jury forepersons. The State presented evidence, and the presiding judge found as a fact that the foreman of the grand jury that returned the 6 October 1987 indictments against defendants "was selected by being elected from the members of the Grand Jury sitting on said Grand Jury." He further concluded that "the method used in selecting the Grand Jury foreperson who presided over the Grand Jury which returned the Bill of Indictment in this cause was . . . racially neutral." We see no reason to disturb the presiding judge's finding of fact or conclusions of law. His finding as to how the foreman was selected is supported by the evidence and his conclusion that the method used in selecting the foreman was racially neutral is, under the circumstances of this case, supported by the finding of fact. The record is silent as to the process used by the grand jury in nominating Mr. Sessoms as the foreman. On its face the process appears to be racially neutral. Nor is there any suggestion that the members of the grand jury acted in other than a racially neutral manner. Accordingly, we reject defendants' contention that the 6 October 1987 indictments must be quashed.

[2] Next, defendants take issue with their inability to conduct pretrial interviews with the children who were witnesses to the

alleged child abuse. The Bladen County Department of Social Services, the legal guardian of the children, refused to allow the children to be interviewed, citing substantial health, legal, and safety rights of the children. Nevertheless, defendants contend that they had a right to interview the children in order to properly prepare for trial.

The right to pre-trial discovery is a statutory right. N.C.G.S. §§ 15A-901 thru 910 (1988). Nothing in the statutory provisions compels State witnesses to subject themselves to questioning by the defense before trial. *See generally State v. Alston,* 307 N.C. 321, 298 S.E.2d 631 (1983); *State v. Pinch,* 306 N.C. 1, 292 S.E.2d 203 (1982). North Carolina rules of discovery provide that in a State criminal prosecution, statements made by a State witness or prospective State witness, other than the defendant, are not subject to discovery until that witness has testified on direct examination at trial. N.C.G.S. § 15A-903(f)(1) (1988). The children were prospective State witnesses, and defendants had no right to interview them prior to trial without their consent.

[3] In defendants' third argument, they contend that the court erred in quashing subpoenas issued to two of the children ordering them to appear and testify at the 14 December 1987 hearing on defendants' motion to suppress evidence seized pursuant to a search warrant. Defendants contend that since Vera and John Phillips supplied some of the information used in obtaining the search warrant, defendants' inability to subpoena these two children deprived them of the opportunity to present evidence that they were not credible and that the information supplied by them was unreliable. We note first that both Vera and John Phillips were subsequently found competent to testify at trial and that their trial testimony was corroborated by the testimony of other witnesses. We further note that the search warrant contained information from other sources sufficient as an independent basis for issuance of the warrant and that the court's findings of fact supporting validity of the warrant made no reference to the statements of John or Vera Phillips. Since the affidavits supplied in this case support probable cause even without the statements of John and Vera Phillips, the defendants were not prejudiced by their inability to call them as witnesses to impeach the search warrant. *See State v. Louchheim,* 296 N.C. 314, 250 S.E.2d 630 (1979) (even false information contained in an affidavit will not invalidate a search warrant if there is probable cause to support the warrant without the false informa-

tion). We therefore reject defendants' contention that quashing the subpoenas constituted reversible error.

## II.

**[4]** Defendants contend in issue IV that the trial court should not have allowed the pediatrician, Dr. Rule, to give certain testimony on the battered child syndrome and that the trial court should not have given an instruction to the jury on battered child syndrome. Defendants contend the use of battered child syndrome testimony and instruction improperly allows the jury to infer that the injury to the child in question was perpetrated by the caretaker and that this improperly relieves the State of its burden to show the identity of the perpetrator. The State responds that the testimony complained of is authorized by the Rules of Evidence, has been held by this Court to be a proper subject of expert opinion, and that the instructions complained of properly allow a permissible inference based on circumstantial evidence. We agree with the State.

Dr. Rule was qualified and accepted by the court as an expert in pediatrics and child abuse. The portions of Dr. Rule's testimony of which defendants complain are all simply expert opinions or statements of inferences accepted by his profession. Dr. Rule's opinion that children deny abuse when questioned, that parents' continuous access to children is a factor he takes into consideration in determining whether child abuse has occurred, his opinion that the child is abused, and his opinion that the smaller child could not lift the larger child are all within the realm of his expertise and are permissible subjects of expert opinion. *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978).

**[5]** In instructing the jury, the trial judge made it clear that while a finding that a child suffered from the battered child syndrome permits an inference that such injuries were inflicted by a caretaker, such inference is not mandatory, and the burden remains on the State, and not the defendant, in reference to this issue. Therefore, there is no mandatory presumption shifting the burden of persuasion to defendants in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 44 L. Ed. 2d 508 (1975), and *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39 (1979).

**[6]** In questions V, VI, and VII defendants take issue with the trial judge's decision to allow the testimony of John Phillips, Walter White, and John Haugabook. Walter White and John Haugabook

are former foster children of the defendants. John Phillips, the subject of the child abuse charge in this case, testified that defendants chained him to a pole in the basement of their house in Chicago. Defendants objected on the grounds that this evidence was too remote in time. The trial court overruled the objection and instructed the State to be specific as to when these events occurred. John then testified that at the time he was chained to the pole, he was the same size as he was at trial. In light of the discussion which follows, we conclude that this testimony resolves any problem of remoteness. *See State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989).

Defendants were charged with felony child abuse of John. The State was required to prove the identity of the perpetrators. In *State v. Byrd*, 309 N.C. 132, 305 S.E.2d 724 (1983), this Court found insufficient evidence of the identity of the perpetrator of felony child abuse because the evidence showed that there were three other adults living in the house who had the opportunity to inflict the injuries. In the instant case, defendants contended that the injuries to John were inflicted by his younger siblings. In order to show that the defendants were the perpetrators, the State was allowed to present evidence through John that both defendants previously chained him to a pole in their basement in Chicago. These circumstances were similar to the evidence that John was tied with a dog chain in North Carolina and explained the medical evidence that the serious injury to John's ankles was caused by their being tightly bound. As in *State v. Green*, 321 N.C. 594, 604, 365 S.E.2d 587, 593 (1988), "the similarities [of the two incidents] support the reasonable inference that the same person committed both the earlier and the later crimes." The evidence was therefore relevant and admissible under N.C.G.S. § 8C-1, Rule 404(b), for the purpose of proving identity.

[7] Defendants sought to prohibit testimony from White and Haugabook concerning child abuse occurrences that took place in Chicago one or two years prior to the present crimes. White and Haugabook testified that they witnessed defendant Anne Phillips perform the same or similar child abuse acts on John Phillips that Vera and John Phillips had testified about. The trial court allowed the evidence for purposes of corroboration only. "Evidence which is inadmissible for substantive or illustrative purposes may nevertheless be admitted as corroborative evidence in appropriate cases

when it tends to enhance the credibility of a witness." *State v. Burns*, 307 N.C. 224, 229, 297 S.E.2d 384, 387 (1982).

Vera and John Phillips testified that defendants made Tameka eat red peppers and soap. Vera testified that defendants tied John and Tameka with a dog chain and hung them over a door. She stated that defendants beat Tameka with a pan, their fists, a lamp cord, a switch, and a rubber flap. Vera also testified that she saw defendant Anne Phillips put Tameka's head in a commode and flush it.

White and Haugabook provided testimony regarding John being chained to the pole, sexual acts, and the incident involving the red peppers. The testimony of White and Haugabook was essentially the same as the testimony of Vera and John, therefore it added credibility to Vera's and John's statements. White's and Haugabook's testimony was properly admitted as corroborative evidence. *See State v. Higginbottom*, 312 N.C. 760, 324 S.E.2d 834 (1985).

Although the trial judge allowed the testimony of White and Haugabook for corroborative purposes, he also gave limiting instructions prohibiting the jury from considering, "for any purpose as against defendant Sylvester Phillips," testimony regarding any incidents that occurred when Sylvester Phillips was not present. A trial judge may allow evidence which is competent for one defendant, yet incompetent as to a co-defendant, so long as the judge provides an explicit instruction to the jury that such testimony should not be considered by the jury in any way in determining the charges against the co-defendant. *See State v. Franklin*, 248 N.C. 695, 104 S.E.2d 837 (1958). Since the trial judge gave a limiting instruction, there was no error, and these assignments of error are without merit and rejected.

**[8]** In questions VIII and IX, defendants contend that the trial court erred in allowing eighteen autopsy photographs of the victim and photographs of defendants' home and automobile into evidence. Defendants contend that the photographs were prejudicial and irrelevant.

Photographs of homicide victims are admissible at trial, even if they are "gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury." *State v. Murphy*, 321 N.C. 738, 741,

365 S.E.2d 615, 617 (1988); *State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987). The autopsy photographs of the victim were necessary to illustrate the testimony of the pathologist, Dr. Smedburg, and were not excessive or repetitive. Therefore, the photographs were properly admitted. This assignment of error is without merit.

Photographs depicting crime scenes and automobiles belonging to defendants are routinely admitted in criminal trials. *1 Brandis on North Carolina Evidence* § 34 (3d ed. 1988). Photographs of the home depicted the murder scene and the scene of the child abuse crimes. Photographs of the automobile were used in testimony describing the victim being transported to the hospital. Thus, the photographs depicting defendants' home and automobile were properly admitted to portray the scene of the crime.

[9] In question X, defendants contend that the trial court erred in refusing to allow defendants to make offers of proof for the record. The first offer of proof concerned an inquiry of witness Vera Phillips about her knowledge that John Phillips had testified that he knew District Attorney Michael Easley, Assistant District Attorney Thomas Hicks, and Chris Blashfield, a psychologist. Defendants contend that they should have been allowed to ask Vera a series of questions not necessarily related to her knowledge of the charges against the defendants in order to determine whether she was competent to testify in this case. The second offer of proof concerned Mark Podolner's testimony relating to the psychological state of Tarrie Lehmann. Podolner, a social worker, would testify that Tarrie's testimony at trial was inconsistent with statements previously made by Tarrie although Podolner was not in the courtroom when Tarrie testified. The third offer of proof concerned statements made by the children to Detective Steve Bunn that they had been hung over the doors in their home by chains and ropes. The defendants attempted to clarify a previous answer given by Detective Bunn by asking him to specify exactly what doors in the home were used to allegedly hang the children. Three of the remaining four offers of proof concerned the defendants' religious beliefs and their involvement in the church. The final offer of proof concerned certain subpoenas which had been delivered to the Plainview School and the Tarheel School requiring the schools to give Detective Bunn their records regarding the children.

While "[o]rdinarily, counsel should be allowed to insert in the record the answer to a question to which objection has been sustained, . . . where the witness has already answered the question sufficiently to demonstrate the immateriality of the inquiry, the judge's refusal to allow the preservation of the answer will not be held prejudicial error." *State v. Chapman*, 294 N.C. 407, 415, 241 S.E.2d 667, 672 (1978). We have reviewed the seven instances cited by defendants in which the trial judge refused to permit offers of proof, as well as the numerous instances cited by the State in which the trial court permitted defendants to make extensive offers of proof for the record. We find no prejudicial error and no abuse of discretion on the part of the trial judge.

[10] Defendants contend in their next assignment of error that the trial court erred in denying their motion to determine the competency of the child witnesses and their motions for independent psychiatric evaluations of the children. We first note that there is no record of the trial judge denying defendants' motion to determine the competency of the children. However, just prior to trial, defendants renewed their motion and the trial judge at that point conducted a competency hearing for each child witness. The trial judge conducted the competency hearings and made rulings pursuant to N.C.G.S. § 8C-1, Rule 601. Determining the competency of a witness to testify is a matter which rests in the sound discretion of the trial court. *State v. Fearing*, 315 N.C. 167, 337 S.E.2d 551 (1985). Defendants made no objection to the court's rulings which found each of the three child witnesses competent to testify; therefore, defendants are precluded from attacking the rulings for the first time on appeal. N.C.G.S. § 8C-1, Rule 103(a)(1) (1988).

[11] There is no statutory authority for a superior court judge to order a witness to undergo a psychiatric evaluation. *See State v. Fletcher*, 322 N.C. 415, 368 S.E.2d 633 (1988); *State v. Clontz*, 305 N.C. 116, 286 S.E.2d 793 (1982). Also, defendants have not shown any prejudice from denial of their motions for independent psychiatric examinations of the children, assuming the court had such authority. The child witnesses had been given a psychiatric evaluation by Dr. Lee. Dr. Lee was not a State employee, and the psychiatric evaluations were not requested by the State of North Carolina. Dr. Lee's testimony was available to defendants to bring out at trial the mental retardation and psychiatric problems of the children. Thus, this assignment of error is without merit.

[12]　Defendants' question XII asserts a Brady violation. The United States Supreme Court, in *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Defendants contend that the trial court erred by refusing to conduct an *in camera* inspection or to order disclosure of psychological, medical, and school records. Defendants also contend that the court erred by refusing to admit testimony regarding psychological evaluations performed on the victim and the child witnesses. Defendants contend that they were denied access to medical, hospitalization, school, and social services records that pertained to the three child witnesses and the victim. Defendants further contend that these records were needed by them to make an informed decision about the relevancy of the documents.

A judge is required to order an *in camera* inspection and make findings of fact concerning the evidence at issue only if there is a possibility that such evidence might be material to guilt or punishment and favorable to the defense. However, if after the judge examines the evidence he rules against the defendant's discovery motion, the judge should order the records sealed for appellate review. *State v. Hardy*, 293 N.C. 105, 128, 235 S.E.2d 828, 842 (1977).

Judge Barefoot requested for his review all records in the possession of the Bladen County Department of Social Services, the Bladen County Mental Health Department, Cumberland County Hospital, the Bladen County Board of Education, and Dr. Fred Lee relating to John and Vera Phillips. On 18 December 1987, Judge Barefoot entered an order stating that he had received all of the records and examined them *in camera*. Judge Barefoot stated that he found no information favorable to the defendants. Judge Barefoot concluded that the documents examined were not discoverable by the defendants and that the information should be sealed for appellate review. Judge Ferrell, the trial judge, refused to review the records and also refused to reverse Judge Barefoot's order since Judge Barefoot had already reviewed the documents and had not found anything favorable to defendants. Judge Ferrell had not heard any evidence in the case prior to making his decision; therefore, his reliance on Judge Barefoot's order was proper. We have reviewed the sealed documents, and

we agree with Judge Barefoot's conclusions that the documents do not contain information favorable to either defendant and are not therefore subject to discovery by defendants.

## III.

[13] Defendants contend in their next group of assignments of error that the trial court erred in several instructions given to the jury. In question XV defendants contend that the trial court erred by failing to charge the jury on involuntary manslaughter as to Tameka and misdemeanor child abuse as to John. Misdemeanor child abuse is the nonaccidental infliction of nonserious physical injury to a child by a caretaker. *State v. Byrd*, 309 N.C. 132, 305 S.E.2d 724 (1983). In the instant case, the children suffered serious physical injuries, and defendants contend that they did not inflict any of the injuries on the children. Throughout the trial defendants contended that the other children and not the defendants inflicted the injuries on the victims. The State proceeded on a theory that defendants intentionally inflicted the injuries. Therefore, no evidence was presented to support a verdict of misdemeanor child abuse, and the trial judge was correct in refusing to instruct on such a charge.

Defendants also contend that an instruction on involuntary manslaughter was improperly denied. Involuntary manslaughter is the unintentional killing of a human being without malice proximately caused by either (1) an unlawful act which does not amount to a felony and is not naturally dangerous to human life, or (2) a culpably negligent act or omission. *State v. Greene*, 314 N.C. 649, 336 S.E.2d 87 (1985). The homicide victim, Tameka Lehmann, died of serious physical injuries. There were fresh hemorrhages on her head, neck, genital area, and sacrum, as well as numerous other serious injuries on other parts of her body. The evidence tended to show that the injuries were intentionally inflicted by a cooking pan, a board, a rope, a chain, and scissors. Defendants denied having inflicted the injuries upon Tameka; their evidence tended to implicate the other children as the perpetrators. Therefore, there was no evidence to support involuntary manslaughter. The trial judge did not err in failing to submit involuntary manslaughter as a possible verdict. "It is well settled that a jury should only be instructed with regard to a possible verdict if there is evidence to support it." *State v. Clark*, 325 N.C. 677, 684, 386 S.E.2d 191 (1989). Since there was no evidence to support verdicts of either

involuntary manslaughter or misdemeanor child abuse, the trial judge did not err in failing to instruct the jury on these charges.

[14] In defendants' question XVI, they contend that the trial court committed reversible error in its instruction to the jury on felony child abuse. Felony child abuse is the intentional infliction of serious injuries by a caretaker to a child. *State v. Campbell*, 316 N.C. 168, 340 S.E.2d 474 (1986). Defendants contend that in the trial judge's instruction on felony child abuse he incorrectly defined serious physical injury to be "such physical injury as causes great pain and suffering." The relevant child abuse statute provides:

A parent or any other person providing care to or supervision of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child or who intentionally commits an assault upon the child which results in any serious physical injury to the child is guilty of a Class H felony.

N.C.G.S. § 14-318.4(a) (1986).

The trial judge defined serious physical injury as injuries that cause great pain and suffering. Defendants contend that the trial judge's definition of serious physical injury was incorrect in light of *State v. Young*, 67 N.C. App. 139, 312 S.E.2d 665 (1984). However, *Young* was overruled by *State v. Campbell*, 316 N.C. 168, 340 S.E.2d 474. *Young* also predates the relevant statute in the present case and therefore is not applicable. We hold that the trial court's instruction on felony child abuse was proper.

[15] In defendants' next assignment of error, they challenge the judge's instruction on murder by torture because a definition of torture was not given and because the evidence was not sufficient to support a verdict of murder in the first degree by torture.

Defendants' complaint is that although the judge instructed the jury that the State had the burden to prove beyond a reasonable doubt that defendants intentionally tortured Tameka, the judge nevertheless did not include a definition of torture. However, after deliberations had begun, the jury returned to the courtroom and requested a definition of torture. The judge then instructed that "torture is defined to be the act or process of inflicting great, severe or extreme pain by one or more persons upon another." He stated that "in this context, torture means something more than a single act." Defendants concede that the court's definition

of torture was correct; however, they contend that the judge failed to describe the differences between a first degree torture murder and an unlawful killing in which the victim suffered great, severe, or extreme pain. We note, and defendants admit, that the trial judge charged the jury that, to convict defendants of murder by torture, the torture must have been 1) intentionally inflicted, 2) with malice, and 3) a proximate cause of the death of the victim. Nevertheless, defendants contend that if they are charged with first degree murder by torture, the jury must be instructed that defendants committed the torturous acts with premeditation and deliberation. We disagree. The jury instructions given by the trial judge parallel the instructions approved in *State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986), comport with the North Carolina Pattern Jury Instructions, and are correct.

North Carolina General Statute § 14-17 separates first degree murder into four distinct categories, as follows:

1. Murder perpetrated by means of poison, lying in wait, imprisonment, starving or torture;

2. Murder perpetrated by any other kind of willful, deliberate and premeditated killing;

3. Murder committed in the perpetration or attempted perpetration of certain enumerated felonies;

4. Murder committed in the perpetration or attempted perpetration of any other felony committed or attempted with the use of a deadly weapon.

N.C.G.S. § 14-17 (1986 & Cum. Supp. 1990).

Neither premeditation and deliberation nor intent to kill are elements of murder in the first degree when the homicide is perpetrated by means of torture. *State v. Johnson*, 317 N.C. 193, 203, 344 S.E.2d 775, 781. Since premeditation and deliberation are not elements of the offense as charged, the trial court was not required to instruct the jury on such elements. We further conclude that any error that may have been committed by omitting the definition of torture in the original jury instructions was cured when the jurors later requested and the judge provided them with a correct definition of torture.

[16]  In defendants' question XVIII, they contend that the trial court committed prejudicial error by refusing to instruct on Sylvester

Phillips' decision not to testify. At the conclusion of the evidence, the trial court conducted a jury instruction conference as mandated by N.C.G.S. § 15A-1231(b). At the conference, defendant Sylvester Phillips made no written requests for instructions and did not make a written or oral request for the trial court to instruct the jury on the effect of the defendant's decision not to testify. Judge Ferrell then informed the parties, pursuant to N.C.G.S. § 15A-1231(b), what portions of the tendered instructions he would give, and also informed them of what offenses he would instruct. He also told counsel for defendant that his charge would be "right out of the [pattern jury instruction] book."

After Judge Ferrell gave his charge and sent the jury out, counsel for Sylvester Phillips, for the first time, requested pattern jury instruction 101.30 on his client's decision not to testify. Since counsel did not present the request in writing and did not request it prior to the jury charge, Judge Ferrell declined to call the jury back for this special instruction. This was not the same sequence of events as in *State v. Ross*, 322 N.C. 261, 367 S.E.2d 889 (1988), filed in May of 1988, three months after the trial of the instant case. In *Ross*, defendant's counsel made a timely request for the charge, the court agreed to give it, and then, apparently through inadvertence, omitted to give the charge. This Court found this to be a violation of the defendant's constitutional rights which was prejudicial. In the instant case, counsel for Sylvester Phillips did not make a timely request for the instruction and Judge Ferrell made no promise to give the instruction. This distinguishes the instant case from our decision in *Ross*. Nor is defendant entitled to relief under the United States Supreme Court's decision in *Carter v. Kentucky*, 450 U.S. 288, 67 L. Ed. 2d 241 (1981) (upon timely request, a state trial court must give an instruction that a defendant's failure to testify should not prejudice him).

We also reject defendants' contentions in argument XIX that the trial judge erred in failing to give special instructions not requested by defendants until after the court had charged the jury and the jury had been sent to the jury room. *See State v. Martin*, 322 N.C. 229, 367 S.E.2d 618 (1988) (defendant waived right to object by failing to submit request for instruction in writing at or before the jury conference).

[17] In defendants' question XX, they contend that the trial court erred by indicating on the verdict sheet that defendants could

be found guilty of first degree murder based upon the theories of either premeditation and deliberation or torture or both. Defendants contend that there was no justification for submitting the alternate theories of conviction of first degree murder to the jury and that submitting the issues in this manner caused the jurors to be confused. We find no evidence that the jurors were confused or prejudiced by the choices listed on the verdict sheet. The jury found both defendants guilty of murder in the first degree by torture and made no finding as to murder in the first degree based on premeditation and deliberation. Had the jury recommended a sentence of death, a finding of the existence of premeditation and deliberation could have been relevant to this Court's proportionality review of the sentence. *See State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984). We find no merit in this assignment of error.

## IV.

[18] In defendants' questions XXI through XXVI they contend that the evidence was insufficient to withstand their motion to dismiss, that the court erred by refusing to enter a judgment notwithstanding the verdict or to set aside the verdict, and that the court erred by refusing to grant a mistrial or in the alternative a new trial. We conclude that the evidence was sufficient to submit the charges of first degree murder and felony child abuse to the jury and to sustain the jury verdicts, and that there was no error or abuse of discretion in denying defendants' requests submitted in questions XXI through XXVI.

For the reasons stated herein, we conclude that defendants received a fair trial, free from prejudicial error.

No error.