**STATE v. WILKERSON**

[223 N.C. App. 195 (2012)]

———————

STATE OF NORTH CAROLINA v. DONUATTE MARQUISE WILKERSON

No. COA12-175

(Filed 16 October 2012)

**1. Evidence—authentication—text message—substantial circumstantial evidence—defendant was sender**

The trial court did not err in a felonious larceny after breaking and entering and felonious possession of stolen goods case by admitting the text message from defendant's cell phone. The State presented substantial circumstantial evidence tending to show that defendant was the sender of the text message at issue.

**2. Probation and Parole—extended sentence—supported by the findings—imposition of punishment allowed**

The trial court did not err in a felonious larceny after breaking and entering and felonious possession of stolen goods case by placing defendant on probation for sixty months. The trial court supported its rationale with evidence of phone calls and a text message which it found raised the seriousness of the offense.

Further, even if the trial court sought to impose punishment with the extended probation period, it was not contrary to our laws or to the purpose of our criminal justice system.

Appeal by Defendant from judgment entered 26 October 2011 by Judge Michael E. Beale in Hoke County Superior Court. Heard in the Court of Appeals 28 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Benjamin J. Kull, for the State.*

*William B. Gibson, for Defendant.*

BEASLEY, Judge.

Donuatte Marquise Wilkerson (Defendant) appeals from judgment entered on his convictions for felonious larceny after breaking and entering and felonious possession of stolen goods. For the following reasons, we find no error.

On 28 August 2009, the victim, John Dintelmann reported a break-in at his home in Hoke County to police. He reported that a 52-inch flat screen Samsung television, some laptop computers, a desktop computer, a keyboard, speakers, a Wii game, several DVDs, a laundry basket, jewelry, and some change had been stolen from his home.

Earlier that same day, Phyllis Bethea, Mr. Dintelmann's neighbor who lived three houses down, observed a light-colored, "older model," large-sized car driving slowly up and down the street. She watched the car pass her house three times within five to ten minutes. Ms. Bethea testified that, initially, the driver was alone in the car and was on his cell phone. However, when the car passed her house again coming from the direction of Mr. Dintelmann's home, she observed more than one person in the car. She found the car suspicious and called police to report it. Ms. Bethea provided the police with two possible license plate numbers to the car. One of the plate numbers was registered to Defendant's car, a white, 1996 Lincoln Town Car.

The next day, Detective Sergeant Donald Schwab of the Hoke County Sheriff's Office went to Defendant's home and spoke with Defendant. Defendant's white 1996 Lincoln Town Car was parked at the residence, and Sergeant Schwab asked Defendant for his consent to search the car. Defendant consented, unlocked the car and opened the trunk. The trunk contained a laundry basket filled with several

"computer items" that matched the description of the stolen property. Sergeant Schwab seized this property and two cell phones from Defendant's pocket. One of the cell phones, a Nokia, was Defendant's and was serviced by T-Mobile.

At trial, the State presented testimony from Antoinette Moore, a T-Mobile Wireless records custodian. Ms. Moore provided "call details records" for Defendant's Nokia phone. She testified that a number of calls were made from or received by Defendant's phone on the day of the crime, starting at 10:56 a.m. and concluding at 1:24 p.m. Ms. Moore explained the process involved in transmitting cellular signals: calls made or received in a given area will be transmitted through the closest cell tower that is not busy. She provided the times, length, and tower locations of each call. Sergeant Schwab then testified that he visited each cell tower and plotted their locations on a map according to the time the call was received by the tower. The calls began and ended in Cumberland County, where Defendant resides, following a path to and from Hoke County with the calls hitting towers 1.5 and 1.7 miles from the victim's home in Hoke County.

Ms. Moore also testified that a text message was sent from Defendant's phone at 10:45 a.m. Pacific Daylight Time, based on T-Mobile records housed in Seattle, Washington. Sergeant Schwab testified that he searched the phone after seizing it and found a text message in the "sent" folder to a number labeled "work." On the phone itself, the message was time stamped at 2:45 p.m. on 28 August 2009, the day of the crime. It read, "I got a 64 inch flat Samsung."

During trial, in anticipation of the text message evidence and outside the presence of the jury, Defense counsel objected to its admission on the grounds that it could not be properly authenticated. The court heard from both parties and, before ruling, noted that the objection by Defense counsel was a motion *in limine*. Before ruling the message was admissible, the court required that the State first present evidence showing that the phone was in Defendant's possession, Defendant claimed the phone was his, Defendant's car was seen on the victim's street around the time of the crime, the phone records tend to establish a path of travel to the victim's residence and back to Defendant's residence, and a large Samsung flat screen television was stolen.

The jury found Defendant guilty of felonious larceny after breaking and/or entering, guilty of possession of stolen goods, and not guilty of felonious breaking and/or entering. The trial court arrested

judgment on the larceny conviction and sentenced Defendant to imprisonment for a period of six to eight months on the possession conviction, with sixty days active and the remainder suspended. The trial court also ordered five years of probation "in light of evicence [sic] in this case appears to be much more serious than a normal break/enter because of phone calls & text messages during the time of the crime."

**[1]** Defendant first argues that the trial court erred by admitting the text message from Defendant's cell phone as it was not properly authenticated under Rule 901 of the North Carolina Rules of Evidence with respect to who sent the message or at what time it was sent. N.C. Gen. Stat. § 8C-1, Rule 901(a) (2011). After careful review of all of the evidence on the record, we find no error.

A motion *in limine* "can be made in order to prevent the jury from ever hearing the potentially prejudicial evidence thus obviating the necessity for an instruction during trial to disregard that evidence if it comes in and is prejudicial." *State v. Tate*, 300 N.C. 180, 182, 265 S.E.2d 223, 225 (1980). "The decision of whether to grant . . . a motion [*in limine*] rests in the sound discretion of the trial judge." *State v. Hightower*, 340 N.C. 735, 746-47, 459 S.E.2d 739, 745 (1995). This Court has previously applied this standard of review to an appeal from a denied motion *in limine* based on admissibility of text messages under Rule 901 of the North Carolina Rules of Evidence. *State v. Taylor*, 178 N.C. App. 395, 412-15, 632 S.E.2d 218, 230-31 (2006). As the trial court here made clear that it was considering Defendant's objection as a motion *in limine*, we review Defendant's appeal for an abuse of discretion. "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted).

Under Rule 901 "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a). The rule also provides a nonexclusive list of methods of acceptable authentication, including testimony from a knowledgeable witness "that a matter is what it is claimed to be[;]" "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances[;]" and "[e]vidence describing a process or system used to produce a result and showing that

the process or system produces an accurate result." N.C. Gen. Stat. § 8C-1, Rule 901(b)(1), (4), (9).

Defendant cites *Taylor*, in support of his assertion that because he was not specifically named as the sender in any of the texts, the authentication was not proper. However, Defendant misunderstands our ruling in *Taylor*. In *Taylor*, we affirmed the trial court's denial of the defendant's motion *in limine* to exclude text messages where expert witnesses testified as to the process employed in sending and receiving text messages and where circumstances indicated that the victim was the sender by identifying the victim twice by his first name and identifying the vehicle he would be driving. *Taylor*, 178 N.C. App. at 412-15, 632 S.E.2d at 230-31. Here, Defendant attempts to rely on the fact that the exact same identifying circumstances, largely his name, were not present in this case. Yet, this is not what *Taylor* requires. Relying on the language of Rule 901, we found "[t]he text messages contain[ed] sufficient circumstantial evidence that tends to show the victim was the person who sent and received them." *Id.* at 414, 632 S.E.2d at 230. Thus, the fact that the defendant was identified by name was merely a *circumstance* that satisfied the statute, not a specific requirement in and of itself.

Here, the State presented substantial circumstantial evidence tending to show that Defendant was the sender of the text message at issue. Defendant's car was seen driving up and down the victim's street on the day of the crime in a manner such that an eyewitness found the car suspicious and called police. The eyewitness provided a license plate number and a description of the car that both matched Defendant's car, and she testified that the driver appeared to be using a cell phone. The morning after the crime, the car was found parked in front of Defendant's home and some of the stolen property was found in the trunk. The phone was found on Defendant's person the following morning. Around the time of the crime, multiple calls were made from and received by Defendant's cell phone. The message itself referenced an item that was stolen: a large, flat-screen Samsung television. Further, similar to *Taylor*, by referencing the cell towers used to transmit the calls, expert witnesses established the time of the calls placed, the process employed, and a path of transit tracking the phone from the area of Defendant's home to the area of the victim's home and back.

Defendant argues that inconsistencies in the timing of the message resulting from the difference in time zones between where the

messages were sent and where the records were stored and time stamped negates the authenticity of the message. However, such issues in witness credibility are for the trial court to weigh in making its determination of authenticity and we see nothing in these facts to indicate this was done abusively. From the circumstances and testimony provided above, which the trial court carefully weighed, it is reasonable to find that Defendant was the sender of the text message. Consequently, we find the trial court did not abuse its discretion in denying Defendant's motion *in limine* to exclude the text message.

**[2]** Defendant next argues that the trial court erred by placing Defendant on probation for sixty months without making findings adequate to support the decision. We disagree.

"Alleged statutory errors are questions of law, and as such, are reviewed *de novo*." *State v. Mackey*, ___ N.C. App. ___, ___, 708 S.E.2d 719, 721 (2011) (citations omitted). By statute, the maximum length of probation that the trial court may impose is thirty-six months "[u]nless the court makes specific findings that longer or shorter periods of probation are necessary." N.C. Gen. Stat. § 15A-1343.2(d) (2011). If such findings are made, the probation may extend up to five years (sixty months). *Id.* Yet the statute merely requires a finding that a longer term is needed; it does not require detailed rationale. *See State v. Mucci*, 163 N.C. App. 615, 625, 594 S.E.2d 411, 418 (2004)("[W]e must remand this case for re-sentencing in order for the trial court to either impose a probation term consistent with the statute or to make the appropriate finding of fact *that a longer probationary period is necessary*." (emphasis added and citation omitted)); *State v. Cardwell*, 133 N.C. App. 496, 509, 516 S.E.2d 388, 397 (1999)("The trial court may either reduce Defendant's probation to the statutory period or may enter *a finding that the longer period is necessary*." (emphasis added)).

Here, the trial court went beyond the statutory requirement. It supported its rationale with the evidence of the phone calls and text message which it found raised the seriousness of the offense: "Prob length 60 mths in light of evicence [sic] in this case appears to be much more serious than a normal break/enter because of phone calls & text messages during the time of the crime." As such, we find no error.

Under this same argument, Defendant also contends that the extended probation was inappropriately imposed as a form of punishment rather than for reformation. However, this claim is without

merit. As the State correctly points out, the North Carolina General Statutes provide several purposes behind criminal sentencing, including "punishment commensurate with the injury . . . caused" among them. N.C. Gen. Stat. § 15A-1340.12 (2011). Thus, even if Defendant is correct that the trial court sought to impose punishment, this is not contrary to our laws or to the purpose of our criminal justice system.

No Error.

Judges MCGEE and THIGPEN concur.