STATE OF NORTH CAROLINA v. KENTAY LAMARR LEE

No. COA00-1486

(Filed 5 February 2002)

**1. Confessions and Incriminating Statements— Miranda warnings—juvenile**

The waiver of rights form read to a juvenile charged with murder was sufficient to inform defendant of his rights where it clearly informed defendant that he had a right to an attorney before questioning began, there was nothing to indicate that defendant's Miranda warnings were conditioned on his willingness to be interrogated, defendant had been arrested before, and the detective testified that defendant was very willing to talk, was cocky about what he had done, and showed no remorse.

**2. Sentencing— life imprisonment—14 year old—not cruel and unusual**

A life sentence for a defendant convicted of murder who was 14 years old at the time of the crime was not cruel and unusual in the constitutional sense.

**3. Homicide— first-degree murder—short form indictment**

The short form indictment for first-degree murder was sufficient to confer jurisdiction on the trial court.

Appeal by defendant from judgment entered 7 July 2000 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 November 2001.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

TYSON, Judge.

Kentay Lamarr Lee ("defendant") appeals the trial court's judgment and sentence of life imprisonment without parole. The trial court entered judgment after a jury verdict convicted defendant of first-degree murder based on premeditation and deliberation, and felony murder, and guilty of robbery with a dangerous weapon. We find no error.

## I. Facts

On 31 December 1998, Edward Mingo ("Edward") and his brother William Mingo ("William") hosted a New Year's Eve party. Edward and William were both developmentally disabled and lived in separate apartments at Edwin Towers, a public owned residential complex for elderly and young adults with mental disabilities. William recruited people from the street to enlarge the party. William encountered two teenagers later identified as Terrence Henderson ("Henderson") and defendant and brought them to the party. The building's lobby video camera recorded William, defendant, and Henderson enter the building at 9:40 p.m. Defendant wore a dark-blue Carolina Panther's sweatshirt. Everyone at the party drank alcohol and listened to music. William testified that Edward appeared drunk.

William left the party a couple more times, once to buy more beer and again to invite some women back to the party. The lobby camera recorded William leaving at 10:25 p.m. and defendant and Henderson leaving six minutes later. William returned at 10:39 p.m. with more beer. William left again at 10:57 p.m. At 11:05 p.m., the camera recorded defendant, still wearing the blue Panther's sweatshirt, and Henderson standing outside the building next to the self-locking security doors. Defendant and Henderson slipped back into the building after a resident opened the doors as he was leaving. The camera recorded defendant and Henderson exit the building at 12:24 p.m.

Defendant was now wearing a leather jacket later identified as belonging to Edward.

On 2 January 1999, William walked to his brother's apartment to return his glasses. William noticed Edward's door was unlocked. William entered and found Edward dead, lying face down on the floor.

Officers entered the apartment and observed that the couch, living room wall, and floor were covered in blood. Detective Robert Buening ("Detective Buening") testified that the living room and bedroom had been ransacked, and that he saw various injuries on Edward's body. He collected a bloody hammer, covered with hair tissues and traces of scalp.

Dr. James Sullivan ("Dr. Sullivan") performed an autopsy on Edward's body. Dr. Sullivan recorded multiple trauma injuries, including: three cutting wounds, six lacerations or gashes on the head, bruising across the forehead, and approximately twelve other cutting wounds on his back, chest, arm pit, and leg. Dr. Sullivan opined that these trauma injuries, probably resulting from a box cutter and a hammer, caused Edward's death.

The police arrested and transported defendant and Henderson to the police station on 8 January 2000 at approximately 8:15 p.m. Both communicated a statement to police. Defendant was fourteen years old at the time of the crime.

Detective Buening testified that he read defendant his rights from the Charlotte-Mecklenburg Police Department's standard juvenile waiver of rights form ("waiver form") before questioning defendant about the murder. Detective Buening testified that defendant acknowledged that he understood his rights, and that defendant initialed each right listed on the waiver form.

Defendant was tried non-capitally on 26 June 2000. Defendant did not testify or offer evidence. The statements of defendant and Henderson were entered into evidence. Defendant's incriminating tape recorded statement and transcript thereof were published to the jury. The jury found defendant guilty of (1) first-degree murder based on premeditation and deliberation and felony murder, and (2) robbery with a dangerous weapon. The trial court sentenced defendant to life imprisonment without parole for first-degree murder and 55 months minimum and 75 months maximum for robbery with a dan-

gerous weapon to run consecutively with the life sentence. Defendant appeals.

## II. Issues

Defendant assigns the following errors: (1) the trial court erred by denying defendant's motion to suppress his statement to police, (2) the trial court erred in sentencing defendant to life imprisonment without parole on first-degree murder, and (3) the trial court erred by entering judgment on the first-degree murder verdict and sentencing because the murder indictment was insufficient. Defendant has assigned numerous other errors. All other assignments raised and not argued by defendant are deemed abandoned pursuant to N.C. R. App. P. 28(b)(5) (1988).

## III. Motion to Suppress Defendant's Statement to Police

[1] Defendant argues that the waiver form warnings read to defendant were, as a matter of law, insufficient and defective, failing to satisfy the requirements of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, *reh'g denied*, 385 U.S. 890, 17 L. Ed. 2d 121 (1966).

*Miranda* requires that, prior to questioning, a defendant be informed that he "has the right to remain silent, that anything he says can be used against him, . . . [and] that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning . . . ." *Id.* at 478-79, 16 L. Ed. 2d at 726. Additionally, a defendant must be informed of his right to an attorney during questioning. *Duckworth v. Eagan*, 492 U.S. 195, 204, 106 L. Ed. 2d 166, 178 (1989). Moreover, the right to counsel before and during questioning cannot be "linked with some future point in time." *California v. Prysock*, 453 U.S. 355, 360-61, 69 L. Ed. 2d 696, 701-02 (1981). "An interrogating officer need not explain the *Miranda* rights in any greater detail than what is required by *Miranda*, even when the suspect is a minor." *State v. Flowers*, 128 N.C. App. 697, 700, 497 S.E.2d 94, 96-97 (1998) (citing *Prysock*, 453 U.S. at 356-57, 361, 69 L. Ed. 2d at 699-700, 702; *Fare v. Michael C.*, 442 U.S. 707, 726, 61 L. Ed. 2d 197, 213 (1979); *State v. Brown*, 112 N.C. App. 390, 395-97, 436 S.E.2d 163, 166-68 (1993), *aff'd per curiam*, 339 N.C. 606, 453 S.E.2d 165 (1995)).

"In addition to the above-mentioned constitutional rights, our legislature has granted to juveniles the right to have a parent, guardian or custodian present during questioning." *State v. Miller*,

344 N.C. 658, 666, 477 S.E.2d 915, 920 (1996) (citing N.C. Gen. Stat. § 7A-595(a)(3) (1995)).

Here, Detective Buening read defendant his rights from the waiver form, which states:

(1) I have the right to remain silent. That means I do not have to say anything or answer any questions.

(2) If I decide to start answering questions, I still have the right to <u>stop</u> answering questions any time I want to.

(3) If I do answer questions or say anything, whatever I say can be used against me.

(4) I have the right to have a parent, guardian, or custodian here with me now during questioning . . . .

(5) I have the right to talk to a lawyer and to have a lawyer here with me now to advise and help me during questioning.

(6) If I want to have a lawyer with me during questioning but do not have a lawyer, one will be provided to me at no cost <u>before</u> I am questioned.

(7) If I agree to answer questions now, without a lawyer, parent, guardian, or custodian here, I still have the right to <u>stop</u> answering questions whenever I want to.

(8) If I decide to answer questions now, I can still change my mind and <u>stop</u> answering questions until I have talked to a lawyer an/or parent, guardian or custodian.

(Emphasis in original).

Defendant contends that these warnings were insufficient because they (1) did not clearly inform defendant that he had a right to an attorney before the questioning began, and (2) that they conditioned defendant's right to counsel to his willingness to undergo interrogation. The entire record before us does not support defendant's contentions.

"*Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures." *Prysock*, 453 U.S. at 359-60, 69 L. Ed. 2d at 701. " 'The now familiar *Miranda* warnings . . . *or their equivalent*' " is sufficient. *Id.* at 360, L. Ed. 2d at 701 (emphasis in original) (citation omitted). "Words that convey the substance of pre-

questioning warnings are sufficient." *Miller,* 344 N.C. at 666, 477 S.E.2d at 920 (citation omitted).

"A defendant may waive his *Miranda* rights, but the State bears the burden of proving that the defendant made a knowing and intelligent waiver." *State v. Brown,* 112 N.C. App. 390, 396, 436 S.E.2d 163, 167 (1993) (citing *State v. Simpson,* 314 N.C. 359, 334 S.E.2d 53 (1985); *Miranda,* 384 U.S. at 444, 16 L. Ed. 2d at 707)). "The totality of the circumstances must be carefully scrutinized when determining if a youthful defendant has legitimately waived his *Miranda* rights." *Miller,* 344 N.C. at 666-67, 477 S.E.2d at 920 (citing *State v. Fincher,* 309 N.C. 1, 19, 305 S.E.2d 685, 697 (1983)). " 'Whether a waiver is knowingly and intelligently made depends on the specific facts and circumstances of each case, including the [defendant's] background, experience, and conduct . . . .' " *Id.* (citing *Simpson,* 314 N.C. at 367, 334 S.E.2d at 59); *Edwards v. Arizona,* 451 U.S. 477, 68 L. Ed. 2d 378, *reh'g denied,* 452 U.S. 973, 69 L. Ed. 2d 984 (1981).

The waiver form's language unequivocally informed defendant that he had the right to a lawyer "now." Number 5 on the waiver form states that "I have a right to talk to a lawyer and to have a lawyer here with me *now* to advise and help me during questioning." (Emphasis added). Detective Buening read defendant his *Miranda* warning rights from the waiver form, and defendant initialed each right, prior to any questioning about the crime. Based on the circumstances in this case the word "now" can only refer to the time prior to or before the questioning about the murder.

Similarly, number 6 on the waiver form states that "[i]f I want to have a lawyer with me during questioning but do not have a lawyer, one will be provided to me· at no cost before I am questioned." (Emphasis in original). The word "before" is underlined on the form. We conclude that the words "now," "before," and "during" read in conjunction with all the rights enumerated on the waiver form sufficiently inform a defendant of his constitutional rights to· a lawyer before and during questioning.

Second, there is nothing in the record to indicate that the *Miranda* warnings given to defendant, specifically his right to counsel, was conditioned on his willingness to undergo interrogation or "linked with some future point in time." *Prysock,* 453 U.S. at 360, 69 L. Ed. 2d at 701. Detective Buening testified that he asked defendant if he wanted to "talk to me now about the charges outside the presence of your parent, guardian or lawyer." Detective Buening tes-

tified that defendant "indicated he did" want to talk. Detective Buening placed a "check" on the waiver form that stated:

> I am 14 years old or more and I understand my rights as explained by Officer Buening. I DO wish to answer questions now, WITHOUT a lawyer, parent, guardian, or custodian here with me. My decision to answer questions now, without anyone here to help me, is made freely and is my own choice. No one has threatened me in any way or promised me special treatment. Because I have decided to answer questions now, without anyone here to help me, I am signing my name below.

(Emphasis in original). Defendant then signed his name right below the above-paragraph on the waiver form, after having initialed each right enumerated. The record before us is clear that, given the age of defendant, Detective Buening took extra care to provide defendant his *Miranda* warnings both orally and in writing. There is nothing on the waiver form which links defendant's right to an attorney with his willingness to be questioned.

Finally, the trial court included a finding of fact in its order denying defendant's motion to suppress that "defendant had been through the juvenile arrest process more than once before, and was not naive where his rights were concerned." Detective Buening also testified that defendant was "very willing to talk," was cocky about what he had done, and showed no remorse.

We hold: (1) that the rights and words read to and initialed by defendant constituted a fully effective equivalent of the *Miranda* warnings, conveyed the substance of the pre-questioning warnings, and were in full compliance with all constitutional and statutory requirements; and (2) that considering defendant's background, experience, conduct, and all facts and circumstances, defendant knowingly and voluntarily waived his right to remain silent and have an attorney or guardian present. This assignment of error is overruled.

### IV. Defendant's Life Sentence Without Parole

[2] Defendant contends that his sentence of life in prison without parole violates the Eighth Amendment of the United States Constitution, as made applicable to the States through the Fourteenth Amendment, and Article I, Sections 19 and 27 of the North Carolina Constitution. Defendant argues that: (1) the sentence does not reflect "the evolving standards of decency that mark the

STATE v̇. LEE

[148 N.C. App. 518 (2002)]

progress of a maturing society," (2) "there is no penological jus-tification for imposing [that sentence] on a fourteen-year-old," and (3) the punishment is disproportionate to the crime. Additionally defendant argues that G.S. § 14-17 and G.S. § 7A-608 are unconstitu-tional on their face, and as applied, for the same reasons outlined above.

We note at the outset that defendant failed to preserve this issue for appeal because he failed to object to the sentence imposed at trial. Defendant asks us to consider his appeal, however, under theories that (1) G.S. § 14-17 and G.S. § 7A-608 are facially unconsti-tutional, and (2) the unconstitutional application of these statutes constituted plain error.

Considering the age of defendant, even if the appeal was properly before us we believe that the holding in *State v. Stinnett*, 129 N.C. App. 192, 199-200, 497 S.E.2d 696, 701-02, *cert. denied*, 525 U.S. 1008, 142 L. Ed. 2d 436 (1998) is dispositive of defendant's G.S. § 14-17 and G.S. 7A-608 facial challenge. "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Defendant has also failed to persuade us that G.S. § 14-7 and G.S. § 7A-601 are unconstitutional as applied to defendant.

Our Supreme Court's holding and analysis in *State v. Green*, 348 N.C. 588, 502 S.E.2d 819 (1998), *cert. denied*, 525 U.S. 1111, 142 L. Ed. 2d 783 (1999), *superceded by statute on other grounds*, 136 N.C. App. 596, 525 S.E.2d 500 (2000) determines and controls defend-ant's cruel and/or unusual punishment and proportionality argu-ments. Defendant's attempts to distinguish *Green* are unpersuasive. In *Green*, the defendant was 13 years old and was sentenced to life in prison for first-degree sexual offense. *Id.* at 592, 502 S.E.2d at 822. The analysis and reasoning in *Green* is even more applicable to the facts at bar. Here, the jury convicted defendant of first-degree murder in a horrific, premeditated and deliberate manner. "It is elementary that this Court is bound by holdings of the Supreme Court." *Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996) (citations omitted). Defendant's punishment " 'is severe but it is not cruel or unusual in the constitutional sense.' " *Green*, 348 N.C. at 612, 502 S.E.2d at 834 (quoting *State v. Fulcher*, 294 N.C. 503, 525, 243 S.E.2d 338, 352 (1978)). This assignment of error is overruled.

## V. Indictment Insufficiencies

**[3]** Defendant contends that the "short" indictment form failed to confer jurisdiction on the trial court arguing that the indictment did not specify all the elements of first-degree murder necessary to put defendant and the grand jury on notice. Defendant concedes that *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326 (2000) controls this issue. We are bound by that decision. *Rogerson*, 121 N.C. App. at 732, 468 S.E.2d at 450.

We conclude that defendant's transfer, trial, and sentence were constitutional and free from error.

No error.

Judges TIMMONS-GOODSON and HUDSON concur.