## STATE v. LOWERY

[219 N.C. App. 151 (2012)]

━━━━━━━━━

STATE OF NORTH CAROLINA v. JAMIE DAQUAN LOWERY

No. COA11-673

(Filed 21 February 2012)

**1. Evidence—doctor testimony not admitted—medical diagnosis or treatment exception inapplicable**

The trial court did not err in a first-degree murder case by denying defendant's motion to admit the testimony of a doctor stating that defendant confessed to the killing only because one of the interviewing officers told him that he would receive the death penalty if he did not confess. Defendant saw the doctor for the purpose of preparing a defense, and the statement defendant sought to admit was not shown to be pertinent to medical diagnosis or treatment.

**2. Constitutional Law—right to confront witnesses—private conversations with attorneys—attorney-client privilege**

The trial court did not violate defendant's constitutional right to confront the witnesses against him in a first-degree murder case by refusing to permit defense counsel to cross-examine two coparticipants regarding conversations they had with their attorneys. The coparticipants' private conversations with their attorneys were protected by the attorney-client privilege. Further, defendant was permitted to inform the jury that the coparticipants were testifying under an agreement with the State and were provided a charge concession.

**3. Sentencing—life imprisonment without parole—not cruel and unusual punishment**

Although defendant contended that the trial court erred in a first-degree murder case by sentencing defendant to life imprisonment without the possibility of parole since it allegedly violated the 8th Amendment's prohibition against cruel and unusual punishment, the Court of Appeals has previously rejected defendant's argument.

**4. Jury—refusal to remove jury foreperson—failure to renew challenge during trial**

The trial court did not err in a first-degree murder case by refusing to remove the jury foreperson from the jury. Defense counsel failed to renew his challenge as required by N.C.G.S. § 15A-1214(h)(2) since he did not attempt to renew the challenge until after the jury returned its verdict. Removal for cause must be requested during the trial.

**5. Evidence—curtailing cross-examination—precluding doctor's testimony**

The trial court did not err in a first-degree murder case by curtailing defendant's cross-examination of witnesses about privileged attorney-client conversations and precluding a doctor's testimony since defendant saw the doctor in preparation of his defense.

Appeal by defendant from judgment entered 9 February 2011 by Judge Claire Hill in Robeson County Superior Court. Heard in the Court of Appeals 30 November 2011.

*Attorney General Roy Cooper, by Senior Deputy Attorney General Robert T. Hargett and Special Deputy Attorney General Melissa L. Trippe, for the State.*

*William H. Dowdy for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Jamie Daquan Lowery appeals from a judgment entered 9 February 2011 after a jury found him guilty of first degree murder pursuant to the felony murder rule. Defendant argues on appeal that: (1) the trial court erred in denying his motion to admit the testimony of Brad Fisher, Ph.D.; (2) that his constitutional right to confront the witnesses against him was violated when the trial court refused to permit defense counsel to cross examine witnesses regarding conversations they had with their attorneys; (3) the sentence of life imprisonment without the possibility of parole constituted cruel and unusual punishment; (4) the trial court erred in denying his motion to remove the jury foreperson; and (5) the trial court denied his right to present a full and complete defense. After careful review, we find no error.

**STATE v. LOWERY**

[219 N.C. App. 151 (2012)]

## Background

On 2 July 2008, Alfred Parnell was shot twice and killed while seated in his truck, which was located near a dumpster area behind a grocery store in Robeson County, North Carolina. It is undisputed that on 2 July 2008, defendant, Joshua Goodson, and Nicholas Blackmon drove to the same dumpster area behind the grocery store where Parnell was parked. Both Goodson and Blackmon were questioned by police in July 2008 and denied any knowledge regarding Parnell's death. However, the two men later cooperated with the investigation and testified against defendant at trial. Goodson and Blackmon admitted before the jury that they had each received a "charge concession," and, according to its terms, had not been charged in connection with Parnell's death. They further testified that they did not know that they would receive a charge concession when they agreed to cooperate with the investigation.

Goodson testified that defendant and Blackmon were passengers in his car on 2 July 2008. He stated that he pulled up to the dumpster area behind the grocery store and placed some bags in a dumpster. He then pulled into the parking lot of the grocery store and went inside. As he was going inside, he saw defendant get out of the car and walk back to the dumpster area. When Goodson returned to the car, he saw defendant "jogging" back to the car "from the road." Defendant then made the statement: " '[M]an, I be trippin.' " However, defendant did not make any incriminating statements related to Parnell's death. Goodson claimed that he did not see defendant with a weapon that day and that he was unaware that Parnell had been shot until he was later informed by his brother, a Lumberton police officer.

Blackmon testified that after Goodson parked the car at the grocery store, defendant exited the car and stated: " 'I'm going to get his ass.' " When defendant returned to the car, he said that he shot Parnell because " 'he wouldn't give it up.' " Blackmon also testified that he did not see defendant with a weapon that day.

Defendant was arrested on 5 August 2008. He was 16 years old at the time. In his initial interview with the police, he denied killing Parnell; however he later confessed to the shooting. On 9 February 2011, a jury convicted defendant of first degree murder pursuant to the felony murder rule, the underlying felony being robbery with a dangerous weapon. The trial court sentenced defendant to life imprisonment without the possibility of parole. Defendant timely appealed to this Court.

## Discussion

### I.

**[1]** First, defendant argues that the trial court erred in denying his motion to admit the testimony of Dr. Fisher. Defendant claims that Dr. Fisher would have testified that defendant told Dr. Fisher that he confessed to the killing only because one of the interviewing officers told him that he would receive the death penalty if he did not confess. Defendant claims that while his statement to Dr. Fisher constituted hearsay, it was admissible pursuant to Rule 803(4) of the North Carolina Rules of Evidence. Defendant's argument is without merit.

A trial court's determination concerning the extent to which an out-of-court statement constitutes inadmissible hearsay is subject to *de novo* review. *State v. Miller,* 197 N.C. App. 78, 87–88, 676 S.E.2d 546, 552, *disc. review denied,* 363 N.C. 586, 683 S.E.2d 216 (2009). Rule 803(4), the medical-diagnosis exception to the hearsay rule, states:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

N.C. Gen. Stat. § 8C-1, Rule 803(4) (2009). Consequently, statements made for the purpose of obtaining medical diagnosis or treatment do not constitute inadmissible hearsay. *Id.*

In evaluating whether a statement is admissible pursuant to Rule 803(4), the trial court must determine that (1) "the declarant intended to make the statements at issue in order to obtain medical diagnosis or treatment" and that (2) "the declarant's statements were reasonably pertinent to medical diagnosis or treatment." *State v. Hinnant,* 351 N.C. 277, 289, 523 S.E.2d 663, 670–71 (2000), *cert. denied,* 544 U.S. 982, 161 L. Ed. 2d 737 (2005). In making such a determination, the trial court must consider "all objective circumstances of record surrounding declarant's statement[.]" *Id.* at 287–89, 523 S.E.2d at 670.

Here, it is evident that defendant was not seeking a diagnosis of his condition for the purpose of obtaining treatment. "Rather, the record clearly shows that the defendant's statements . . . were made for the purpose of preparing and presenting a defense to the crimes for which he stood accused." *State v. Jones,* 339 N.C. 114, 145, 451 S.E.2d 826, 842 (1994), *cert. denied,* 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). At oral arguments in this case, defendant's appellate coun-

sel admitted that defendant saw Dr. Fisher with the hope that any mental illness he may have had could be diagnosed and used as a defense to the crimes charged. Even though defendant may have wanted continued treatment if he did, in fact, have a mental illness, his primary objective was to present the diagnosis as a defense.

As stated in *Jones*, "[a] person's motivation to speak truthfully is much greater when he seeks diagnosis or treatment of a medical condition than when he seeks diagnosis in order to prepare a defense to criminal charges." *Id*. Defendant's motivation in this case was to prepare a defense to the crimes charged; therefore, the statements "lacked the indicia of reliability based on the self-interest inherent in obtaining appropriate medical treatment." *State v. Stafford*, 317 N.C. 568, 574, 346 S.E.2d 463, 467 (1986). Consequently, we hold that defendant did not satisfy the first prong of the test set out in *Hinnant*.

As for the second prong of the *Hinnant* test, defendant has made no argument as to how his statement that he only confessed because an officer told him he would receive the death penalty if he did not confess was "reasonably pertinent to medical diagnosis or treatment." *Hinnant*, 351 N.C. at 289, 523 S.E.2d at 671. Defendant does not contend that his statement had anything to do with a mental illness he may have had at the time. *See State v. Gattis*, 166 N.C. App. 1, 8-9, 601 S.E.2d 205, 210 (2004) (holding that exculpatory statement made by defendant to a nurse and recorded in the nurse's notes was not admissible under Rule 803(4) because it was not reasonably pertinent to diagnosis and treatment).

It is relevant to acknowledge that defendant never sought to suppress his confession. Rather, defendant sought to admit a statement that would have cast doubt on the veracity of his confession without his having to take the stand or challenge the validity of the confession in any way. To hold that this statement was admissible, without any greater showing, would set a harmful precedent that would allow a defendant to improperly introduce exculpatory statements to the jury under the auspices of Rule 803(4). A defendant would only have to make the exculpatory statement to a medical professional and then claim that he saw the medical professional for the purposes of diagnosis or treatment. Clearly, defendant seeks to expand Rule 803(4) far beyond what was intended by the legislature or what is allowed by our caselaw.

In sum, because defendant saw Dr. Fisher for the purpose of preparing a defense, and the statement defendant sought to admit

was not shown to be pertinent to a medical diagnosis or treatment, we hold that defendant's statement to Dr. Fisher was not admissible under Rule 803(4). Therefore, the trial court did not err in denying defendant's motion to admit Dr. Fisher's testimony.

## II.

**[2]** Next, defendant argues that his constitutional right to confront the witnesses against him was violated when the trial court refused to permit defense counsel to cross examine Blackmon and Goodson regarding conversations they had with their attorneys in July 2008. Specifically, defendant sought to inquire as to conversations concerning the State's charge concession should Blackmon and Goodson testify against defendant. Defendant claims that, contrary to their trial testimony, these two witnesses knew that the State was offering a charge concession when they agreed to testify.

This Court reviews *de novo* whether the right to confrontation was violated. *State v. Hurt*, ___ N.C. App. ___, ___, 702 S.E.2d 82, 87 (2010). The Confrontation Clause, applied to the states by the Fourteenth Amendment, protects the fundamental right of an accused "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. "It aims to ensure the evidence is reliable 'by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' " *State v. Jackson*, ___ N.C. App. ___, ___, 717 S.E.2d 35, 38 (2011) (quoting *Maryland v. Craig*, 497 U.S. 836, 845, 111 L. Ed. 2d 666, 678 (1990)). "The elements of confrontation include the witness's: physical presence; under-oath testimony; cross-examination; and exposure of his demeanor to the jury." *Id.* "Confrontation means more than being allowed to confront the witness physically. Our cases construing the confrontation clause hold that a primary interest secured by it is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315, 39 L. Ed. 2d 347, 353 (1974) (citation, quotation marks omitted, and alteration omitted).

Here, defendant sought to question the witnesses about conversations they had with their attorneys, and defendant claims that his confrontation rights were violated because he was not permitted to do so. We hold that Goodson's and Blackmon's private conversations with their attorneys were protected by the attorney-client privilege and the trial court did not err in denying defendant's motion to seek information protected by this privilege.

It is well established that:

> A privilege exists if (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege.

*State v. Murvin*, 304 N.C. 523, 531, 284 S.E.2d 289, 294 (1981). Defendant does not explicitly argue that the communications between the witnesses and their attorneys do not meet this test. Rather, defendant claims that Blackmon and Goodson had no 6th Amendment right to counsel when they met with detectives in July 2008, and, therefore, their communications with their attorneys were not privileged. Defendant confuses the issue. Goodson and Blackmon had not been arrested when they were questioned by police. The two men sought advice of counsel and their respective counsel had discussions with the State that resulted in Goodson and Blackmon agreeing to testify against defendant. As a result, they were never charged with a crime in connection with the killing. Therefore, the issue is not whether Blackmon and Goodson availed themselves of their 6th Amendment right to counsel; rather, the issue is whether the attorney-client privilege prohibited defense counsel from inquiring about the men's private conversations with their attorneys. As stated *supra*, the privilege applies in this instance.

Still, defendant claims that Blackmon and Goodson waived any privileges they may have had when they took the stand to testify. Again defendant confuses the issue, citing cases that pertain to a waiver of a defendant's 5th Amendment rights when he or she takes the stand to testify. Here, Blackmon and Goodson agreed to testify regarding the events surrounding the death of Mr. Parnell. Pursuant to N.C. Gen. Stat. § 15A-1054 (2009), defendant was made aware of the charge concessions and was permitted to inquire about them in order to reveal any ulterior motivation on the part of Goodson and Blackmon. However, the private communications that occurred between the two men and their attorneys regarding their respective agreements with the State were not admissible and the attorney-client privilege was not waived when they took the stand to testify in accordance with their agreements.

Defendant briefly argues that any privileges Blackmon and Goodson may have had should "give way" because such privileges were "in derogation of the search for truth." Defendant cites *Davis*, 415 U.S. at 319, 39 L. Ed. 2d at 355, where the United States Supreme Court held that the defendant was denied his Confrontation Clause rights when the trial court refused to allow him to question a witness about his prior adjudication of juvenile delinquency, which was inadmissible under state law, and his probation status. Defendant argues that, like the defendant in *Davis*, he should have been permitted to ask the witnesses about matters that are generally inadmissible to reveal the witnesses' "bias and prejudice." *Id.* at 311, 39 L. Ed. 2d at 351. This case is inapposite. In *Davis*, the Court held that "the State's desire that [the witness] fulfill his public duty to testify free from embarrassment and with his reputation unblemished must fall before the right of petitioner to seek out the truth in the process of defending himself." *Id.* at 320, 39 L. Ed. 2d at 356. In the present case, defendant asks this Court to vitiate the attorney-client privilege, not merely the right to testify without embarrassment.

Despite defendant's claim that the attorney-client privilege should "give way," to a criminal defendant's right to question a witness about private conversations with his or her attorney, our Supreme Court has recognized the vital importance of the privilege, stating:

> The attorney-client privilege is unique among all privileged communications. In practice, communications between attorney and client can encompass *all* subjects which may be discussed in any other privileged relationship and indeed all subjects within the human experience. As such, it is the privilege most beneficial to the public, both in facilitating competent legal advice and ultimately in furthering the ends of justice.

*In re Miller*, 357 N.C. 316, 333, 584 S.E.2d 772, 785 (2003). Defendant has not presented any caselaw that would suggest that the attorney-client privilege should be nullified so that a defendant can question a witness about confidential conversations for the purpose of impeachment. Granted, defendant was unable to prove his theory that the witnesses were aware of the charge concessions offered by the State when they agreed to testify; however, defendant was permitted to inform the jury that Goodson and Blackmon were testifying pursuant to an agreement with the State and were provided a charge concession. It is unlikely that any questioning regarding conversations between the two men and their attorneys would have produced any

additional information that would have aided the jury in the "search for truth."

Finally, defendant claims that the North Carolina Code of Professional Responsibility's requirement of candor to the tribunal "outweighed Goodson's and Blackmon's attorneys' obligation to assist them[.]" This argument is irrelevant to the matter at hand. Defendant has not cited any authority that would require Goodson's and Blackmon's attorneys to come forth during the trial and inform the trial court that the witnesses did, in fact, know that the State was offering them a charge concession when they agreed to testify.

In sum, the trial court did not err in refusing to allow defendant to question the witnesses about their conversations with their attorneys during charge concession negotiations. These conversations were protected by the attorney-client privilege. Moreover, defendant was allowed to inquire before the jury regarding the agreements ultimately reached with the State. The witnesses' potential bias and/or ulterior motives for testifying were made known to the jury. Consequently, assuming, *arguendo*, that defendant should have been permitted to engage in this line of questioning, we hold that any such error was harmless beyond a reasonable doubt. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) ("However, even when a defendant objects, this constitutional error will not merit a new trial where the State shows that the error was harmless beyond a reasonable doubt.").

## III.

[3] Next, defendant argues that the trial court erred in sentencing him to life imprisonment without the possibility of parole because the sentence violated the 8th Amendment's prohibition against cruel and unusual punishment. This Court has rejected defendant's argument in *State v. Lee*, 148 N.C. App. 518, 525, 558 S.E.2d 883, 888, *appeal dismissed*, 355 N.C. 498, 564 S.E.2d 228, *cert. denied*, 537 U.S. 955, 154 L. Ed. 2d 305 (2002). The Court stated that the "[d]efendant's punishment is severe but it is not cruel or unusual in the constitutional sense." *Id.* (citation and quotation marks omitted). This panel is bound by the holding in *Lee*.

Defendant cites *Graham v. Florida*, ___ U.S. ___, ___, 176 L. Ed. 2d 825, 850 (2010), where the United States Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." This

holding is not controlling in the case *sub judice* because defendant was convicted of committing a homicide.

IV.

**[4]** Defendant claims that the trial court erred in refusing to remove the jury foreperson from the jury. During jury selection, defendant had exhausted his peremptory challenges, but asked the trial court to "strike" Tonya Howell for cause. The transcript of the jury *voir dire* is not available, but according to defendant's trial counsel's affidavit, Ms. Howell stated that she knew the Robeson County District Attorney, Johnson Britt. She revealed, *inter alia*, that Mr. Britt was her son's soccer coach, that she had spoken with him on over 20 occasions, and that she was pleased with the way Mr. Britt had handled various criminal cases involving her son. The trial court denied defense counsel's request to strike Ms. Howell for cause. Ms. Howell subsequently served as the jury foreperson. After the jury returned its verdict, defendant renewed his challenge.

The decision " '[w]hether to allow a challenge for cause in jury selection is . . . ordinarily left to the sound discretion of the trial court which will not be reversed on appeal except for abuse of discretion.' " *State v. Stephens*, 347 N.C. 352, 365, 493 S.E.2d 435, 443 (1997) (quoting *State v. Locklear*, 331 N.C. 239, 247, 415 S.E.2d 726, 731 (1992)), *cert. denied*, 525 U.S. 831, 142 L. Ed. 2d 66 (1998).

N.C. Gen. Stat. § 15A-1214(h) (2009) sets forth the requirements for preservation of the trial court's denial of a request to strike a juror for cause, stating:

> (h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:
>
> (1) Exhausted the peremptory challenges available to him;
>
> (2) Renewed his challenge as provided in subsection (i) of this section; and
>
> (3) Had his renewal motion denied as to the juror in question.

N.C. Gen. Stat. § 15A-1214(i) states:

> (i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:

(1)  Had peremptorily challenged the juror; or

(2)  States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.

The judge may reconsider his denial of the challenge for cause, reconsidering facts and arguments previously adduced or taking cognizance of additional facts and arguments presented. If upon reconsideration the judge determines that the juror should have been excused for cause, he must allow the party an additional peremptory challenge.

It appears from the record that defense counsel in this case failed to renew his challenge as required by N.C. Gen. Stat. § 15A-1214(h)(2). Defendant did not attempt to renew the challenge until after the jury returned its verdict. Clearly, N.C. Gen. Stat. § 15A-1214(h)-(i) contemplates removal for cause *during the trial*. Defendant has, therefore, waived this argument on appeal. *See State v. Sanders*, 317 N.C. 602, 608, 346 S.E.2d 451, 456 (1986) (stating that the "statutory method for preserving a defendant's right to seek appellate relief when a trial court refuses to allow a challenge for cause is mandatory and is the only method by which such rulings may be preserved for appellate review"); *accord State v. Morgan*, 359 N.C. 131, 148, 604 S.E.2d 886, 896-97 (2004), *cert. denied*, 546 U.S. 830, 163 L. Ed. 2d 79 (2005).

V.

**[5]**  Finally, defendant argues that "the trial court's curtailment of appellant's cross-examination of witnesses and preclusion of Dr. Fisher's testimony, violated [defendant's] presentation of a full and complete defense. Because the trial court did not err in excluding Dr. Fisher's testimony and refusing to allow defendant to inquire about privileged attorney-client conversations, the trial court did not limit defendant's right to present a complete defense.

No Error.

Judges GEER and HUNTER, Robert N., Jr. concur.